IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 13 EAP 2020 |
| | : | |
| Appellee | : | Appeal from the Judgment of the |
| | : | Superior Court entered on October |
| | : | 16, 2019 at No. 683 EDA 2017 |
| v. | : | vacating and remanding the |
| | : | Judgment of Sentence entered on |
| | : | February 3, 2017 in the Court of |
| KHALID M. HARTH, | : | Common Pleas of Philadelphia |
| | : | County, Criminal Division, at No. |
| Appellant | : | CP-51-CR-0002122-2015. |
| | : | |
| | : | ARGUED:  December 1, 2020 |

## OPINION

**JUSTICE TODD**                                                    **DECIDED:  June 22, 2021**

In this appeal by allowance, we consider whether a trial court may rely upon its own unavailability as justification for denying a defendant's motion to dismiss pursuant to the speedy trial provisions of Pa.R.Crim.P. 600, without first requiring the Commonwealth to demonstrate that it acted with due diligence in prosecuting the defendant's case.  For the reasons that follow, we find that a trial court may invoke "judicial delay" in order to deny a defendant's Rule 600 motion to dismiss only after the Commonwealth has demonstrated that it complied with the due diligence requirements of Rule 600 at all relevant periods throughout the life of the case.  Thus, we reverse the order of the Superior Court, reverse Appellant's judgment of sentence, and discharge him.

On January 22, 2015, the Commonwealth filed complaints against Appellant Khalid M. Harth and co-defendant Darren Brown in connection with their involvement in a home

invasion and armed robbery 11 days prior. Thereafter, on February 24, 2015, a grand jury indicted Appellant on multiple counts of, *inter alia*, robbery, burglary, conspiracy to commit robbery, and conspiracy to commit burglary.

Relevant to the instant appeal, on April 7, 2015, the trial court held a scheduling conference at which it slated Appellant's trial for September 28, 2015, and ordered the Commonwealth to produce discovery by June 22, 2015. In its docket entry related to the scheduling conference, the court noted: "Defense needs videos, FBI extract, 2010 video[s], discovery for DC-14-15-05913[,] and color photo[s.]" Criminal Docket in *Commonwealth v. Harth*, No. CP-51-CR-0002122-2015 (hereinafter "Criminal Docket"), at 7 (unpaginated). Additionally, the court documented that the "Commonwealth has no medical records," and it scheduled a conference for June 22, 2015, to address the status of discovery. *Id.* According to a docket entry from June 22, 2015, however, the Commonwealth was not ready to produce Indicting Grand Jury ("IGJ") discovery at that time. Thus, the court listed the case for a discovery status conference on July 28, 2015, but maintained the September 28, 2015 trial date.

Thereafter, the Commonwealth requested a continuance for disclosing discovery, which the court granted on July 28, 2015, directing the Commonwealth to produce IGJ discovery by July 30, 2015. Pertinently, on July 30, 2015, the trial court rescheduled Appellant's trial for December 14, 2015, in light of the Pope's impending visit to Philadelphia in September 2015; the associated docket entry provides, in relevant part: "09/28/15 date is blocked, POPE'S VISIT."[1] *Id.* at 9.

---

[1] Several similar docket entries from July 30, 2015 denote that September 24, 2015 was likewise blocked due to the Pope's visit, as the trial court had previously scheduled a trial readiness conference for that date.

The Commonwealth subsequently filed another motion for continuance, which the trial court granted on August 21, 2015, without explanation, and rescheduled Appellant's trial for January 11, 2016, noting in a docket entry that "IGJ discovery [needed] to be passed."[2]  *Id.*  Yet, by order dated December 29, 2015, the trial court rescheduled Appellant's trial for January 25, 2016, again providing no explanation.  Thereafter, because counsel for Appellant's co-defendant was scheduled for trial in an unrelated matter on January 25, 2016, and the Commonwealth refused to sever the defendants' cases, the trial court again rescheduled the trial for May 23, 2016.  *Id.* at 11.

On his scheduled trial date of May 23, 2016, Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600,[3] asserting that the Commonwealth failed to exercise due

---

[2] The lower courts refer to "passing" discovery, terminology we view as synonymous with disclosing discovery to the defense.

[3] Rule 600 provides, in relevant part:

> **(A) Commencement of Trial; Time for Trial**
>
> (1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or nolo contendere.
>
> (2) Trial shall commence within the following time periods.
>
>> (a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.
>
> \*\*\*
>
> **(C) Computation of Time**
>
> (1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence.  Any other periods of delay shall be excluded from the computation.
>
> \*\*\*

diligence in prosecuting his case, in light of its failure to turn over discovery which remained outstanding at that time. On that date and the two ensuing days, the trial court presided over a trial in an unrelated case; thus, it continued Appellant's trial, but refrained from setting a new date. Instead, the court scheduled a hearing on Appellant's Rule 600 motion for June 2, 2016, and noted that it would reschedule his trial thereafter. Notably, the relevant docket entries reflect that "[a]dditional [d]iscovery [was] outstanding" as of

---

> (3)(a) When a judge or issuing authority grants or denies a continuance:
>
> > (i) the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and
> >
> > (ii) the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance. The judge also shall record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.
>
> (b) The determination of the judge or issuing authority is subject to review as provided in paragraph (D)(3).
>
> **(D) Remedies**
>
> (1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600.

May 23 and 24, Criminal Docket at 12, and that, on May 25, 2016, "[a]udio discovery [was] passed at the bar of the [c]ourt," *id.* at 13.

On June 2, 2016, the trial court presided over the scheduled hearing on Appellant's Rule 600 motion, and rescheduled his trial for November 28, 2016. At the hearing, Appellant's counsel argued that the Commonwealth had failed to exercise due diligence in prosecuting the case because it did not disclose relevant discovery, including three disks worth of police records, several police documents, and property receipts, in a timely manner. N.T. Rule 600 Hearing, 6/2/16, at 3-5. Relatedly, counsel asserted that the Commonwealth had not been ready to proceed to trial in January 2016 when it refused to sever Appellant's case from Brown's, given that it had not theretofore provided "extremely important discovery" to the defense. *Id.* at 6. Counsel also contended that the defense team learned that outstanding discovery existed only because counsel coincidentally overheard a conversation in the courthouse hallways between detectives.

Assistant District Attorney ("ADA") Matthew Gehrke, who was reassigned as the prosecutor on Appellant's case shortly before the Rule 600 hearing,[4] countered that Appellant's counsel failed to notify him that they had not been provided with certain discoverable items. *See id.* at 7. ADA Gehrke also argued that the Commonwealth's refusal to sever Appellant's case from Brown's was not indicative of a lack of due diligence, and highlighted that the case was originally scheduled for trial in September 2015, but was relisted for January 2016 in light of the Pope's visit to Philadelphia. Thus, ADA Gehrke asserted that that period of time was excludable under Rule 600, and not

---

[4] According to the docket, ADA Gehrke's first appearance on behalf of the Commonwealth in this case was on May 23, 2016. *See* Criminal Docket at 12. Prior to ADA Gehrke's reassignment, ADA Marcus Washington headed the prosecution; his final appearance, according to the docket, was on January 25, 2016. *See id.* at 11.

attributable to the Commonwealth. According to ADA Gehrke, Appellant's trial was "well within the speedy trial" rule. *Id.* at 8.

On June 22, 2016, the court denied Appellant's motion, reasoning:

> The period from when the first complaint was filed on or about January 22[,] 2015, and the current date is a total of approximately 516 or [5]17 days and subtracting -- or roughly speaking, 369 days of excusable or extendable time, there are a total of 147 days attributable to the Commonwealth, more or less, and this is within the limit of 365 days, and [Appellant] has not shown that the Commonwealth did not exercise due diligence, and therefore the motion to dismiss is denied.

N.T. Hearing, 6/22/16, at 6. Notably, Appellant's counsel sought clarification from the court as to the impact of the Commonwealth's failure to fulfill its discovery obligation, resulting in the following exchange:

> [Appellant's counsel]: Thank you, Your Honor. Just for the record, so it's my understanding that . . . you are considering the fact that the [c]ourt was on trial and not considering the fact that discovery was not complete?
>
> [Trial court]: Well, it doesn't matter to me. If the [c]ourt's on trial, the [c]ourt's on trial. I can't hold that against the Commonwealth. That's considered extendable time.
>
> [Appellant's counsel]: Right, but discovery wasn't complete, and you're saying that that's not included?
>
> [Trial court]: Well, I took it into consideration, but like I said, what's just as dispositive to me is the fact that I -- I'm not going to get into -- locked into a response. I'm taking that into consideration, the fact that I couldn't have done the case if I wanted to. So that's a big factor that I'm looking at.

*Id.* at 6-7.

The case proceeded to trial on November 28, 2016.[5] However, on that morning, the Commonwealth presented the defense with a discovery packet, which included 15

---

[5] On the date of trial, co-defendant Brown entered a guilty plea.

exhibits that the defense claimed were previously undisclosed. Hence, Appellant's counsel tendered a second motion to dismiss pursuant to Rule 600(A), arguing that the Commonwealth failed to exercise due diligence, as it neglected to share discoverable evidence with the defense, despite having such evidence in its possession since early in the case. The parties briefly discussed the record of outstanding discovery, as well as each party's respective intent to utilize the items disclosed that morning in the course of the trial. Thereafter, the trial court indicated that it would take Appellant's motion under advisement, and asked the Commonwealth for a final response to the motion. The Commonwealth responded: "I mean, Your Honor, frankly, you already denied the motion. There hasn't been a change of circumstance. The last continuance was not on the Commonwealth. So it was denied." N.T. Trial, 11/28/16, at 24. The Commonwealth provided no explanation with respect to its failure to disclose discovery throughout the life of the case or, more specifically, regarding its failure to provide the defense with the 15 new exhibits which triggered Appellant's second Rule 600 motion on the morning of trial.

The following day, the trial court denied Appellant's second Rule 600 motion, incorporating by reference the findings it had previously rendered, and reiterating its prior reasoning. *See* N.T. Trial, 11/29/16, at 23. The court also explained that, in its view, Appellant "ha[d] not shown that the Commonwealth did not exercise due diligence," *id.*, and noted that, in any event, even if the Commonwealth was not ready to proceed, it was not "going to hold the Commonwealth responsible," as the court was engaged in other matters which precluded it from holding Appellant's trial at an earlier date, *id.* at 24.

Ultimately, Appellant's jury trial proceeded, spanning November 30, 2016 through December 2, 2016, on which date the jury convicted him of robbery, burglary, and related offenses. He was sentenced to an aggregate term of 8 to 16 years imprisonment, followed by 6 years probation, plus restitution.

Appellant filed a timely notice of appeal with the Superior Court, asserting, *inter alia*, that the trial court erred in denying his Rule 600 motions because his trial commenced more than a year after the Commonwealth filed its criminal complaint. In that regard, Appellant maintained that the trial court incorrectly calculated the number of days which amounted to excusable time; that the Commonwealth's delay in disclosing discovery was not excusable; and that discovery was outstanding on the scheduled trial date in May 2016, and remained so in November 2016, when the Commonwealth provided the defense with discovery on the morning of trial.

In its opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court defended its denial of Appellant's Rule 600 motions, opining that "the Commonwealth established by a preponderance of the evidence that it did exercise due diligence." Trial Court Opinion, 12/13/17, at 9. Without further addressing the matter of due diligence, the court explained that it deducted 369 days of excusable or extendable time from the 516 total days that passed between the initial filing of the complaint on January 22, 2015, and its denial of Appellant's second Rule 600 motion on November 29, 2016, leaving only 147 days of delay attributable to the Commonwealth.[6] More specifically, the trial court stated that the initial period from January 22, 2015 to the April 7, 2015 scheduling conference and the period from April 7, 2015 through September 28, 2015 were "excusable because the delay was beyond the Commonwealth's control *and there was no evidence of its lack of due diligence*;" that the time between January 26, 2016 and May 23, 2016 "was not excludable because the Appellant's counsel was ready for trial;" and that "[t]he remaining 11-day period between May 23, 2016 and the 600(A) dismissal hearing was ruled extendable[,] as the court was on trial on another matter." *Id.* at 10 (emphasis added).

---

[6] The trial court appears to have incorrectly employed January 11, 2015 as the beginning date for purposes of time computation, though the complaint was not filed until 11 days later, on January 22, 2015.

Thus, the trial court concluded that the Commonwealth complied with Rule 600 and that Appellant's claim to the contrary lacked merit.

In a unanimous, unpublished memorandum opinion, a three-judge panel of the Superior Court vacated Appellant's judgment of sentence and remanded. *Commonwealth v. Harth*, 683 EDA 2017 (Pa. Super. filed Oct. 16, 2019). As an initial matter, the Superior Court noted that, because the Commonwealth filed the complaint against Appellant on January 22, 2015, the "mechanical run date" was January 22, 2016.[7] The court then observed that, on June 22, 2015, the original due date for producing discovery, the trial court granted the Commonwealth an extension until July 28, 2015, and another extension to July 30, 2015. The Superior Court, thus, reasoned that the Commonwealth was not ready to disclose discovery on those dates, such that the delay from June 22, 2015 to July 30, 2015 did not amount to excludable or excusable delay.

The Superior Court next found that the trial court's rescheduling of the trial from September 28, 2015 to December 14, 2015, due to the Pope's visit to Philadelphia, was beyond the Commonwealth's control; nevertheless, in the court's view, the record was unclear as to whether that 77-day period constituted excusable delay, in light of the trial court's failure to render a determination with respect to the Commonwealth's due diligence in complying with its discovery obligations. Similarly, the Superior Court observed that the trial court twice rescheduled trial, without explanation, first moving it to January 11, 2016, then to January 25, 2016, for a total delay of 42 days. The court found that, in both instances, the record lacked any indication of the Commonwealth's readiness to proceed to trial, and, moreover, demonstrated that "the Commonwealth had still not

---

[7] The phrase "mechanical run date" refers to "the date by which the trial must commence pursuant to the time limitations set forth in Rule 600." *Commonwealth v. Solano*, 906 A.2d 1180, 1188 n.8 (Pa. 2006). The mechanical run date "is calculated by adding 365 days to the date on which the criminal complaint was filed." *Id.*

passed discovery to Appellant as of December 2015 and January 2016." *Id.* at 26 (citations omitted). Again, the court concluded that it, therefore, could not determine whether that period of time was excusable.

The Superior Court also expressed uncertainty with respect to whether the 118-day delay from January 25, 2016 to May 23, 2016, which stemmed from the unavailability of co-defendant Brown's counsel and the Commonwealth's refusal to sever Appellant's case, constituted excusable delay. Indeed, the court noted that, while the record once more revealed that the Commonwealth had yet to complete discovery during that timeframe, the trial court neglected to make a due diligence determination regarding the Commonwealth's failure in that respect. The Superior Court likewise observed that the delay from May 23, 2016 to May 25, 2016 — though beyond the Commonwealth's control — occurred when discovery remained outstanding, as evinced by the fact that the Commonwealth provided audio discovery to the defense on May 25. Additionally, the court found that the record failed to illuminate whether the Commonwealth was ready to proceed to trial on June 2, 2016 and June 22, 2016, or the reason the trial court rescheduled Appellant's trial for November 28, 2016, more than five months later. The Superior Court reasoned that, during that time period, the Commonwealth had seemingly neglected to fulfil its discovery obligations, as it later provided Appellant with 15 new documents on the morning of trial in November 2016. The court nonetheless concluded that it was unable to discern whether the 187-day period from June 22, 2016 to November 28, 2016 amounted to excusable delay, given that the trial court neglected to assess the Commonwealth's due diligence in its efforts to provide discovery to the defense.

Ultimately, the Superior Court declared that it was "unable to calculate the adjusted run date for Appellant's trial," opining that the record was "inconsistent, at best." *Id.* at 30. In this vein, the court emphasized that the trial court "conducted no due diligence analysis

with respect to whether the Commonwealth had met its discovery obligations throughout the case," and that it failed to determine when the Commonwealth was legitimately prepared for trial to commence. *Id.* at 31. In light of the perceived shortcomings of the record in that regard, the Superior Court remanded the case to the trial court to conduct a hearing to clarify the record with respect to: the cause for every continuance; the Commonwealth's readiness for trial throughout the life of the case; and the Commonwealth's due diligence, or lack thereof. *Id.* (citing *Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010) (stating that, where the Superior Court determined that the trial court misconstrued Rule 600 and failed to focus upon the Commonwealth's due diligence, "the proper action would have been a remand to the trial court to determine whether the Commonwealth exercised due diligence pursuant to Rule 600")). Furthermore, the court directed the trial court to place the burden of proof on the Commonwealth — namely, by requiring the Commonwealth to demonstrate that it acted with due diligence — given that the trial court repeatedly placed the burden on Appellant in addressing his motions.

Appellant subsequently filed a petition for allowance of appeal, and we granted review on the following issue:

> Was the Superior Court's order to remand for a new hearing on the Commonwealth's due diligence in error, insofar as it contradicts precedent and impermissibly gives the Commonwealth a second chance to prove diligence, when the Commonwealth had a full and fair opportunity to do so and failed to meet its burden?

*Commonwealth v. Harth*, 235 A.3d 275 (Pa. 2020) (order).

Before us, Appellant asserts that the Superior Court erred in remanding the case to the trial court for a new Rule 600 hearing, rather than vacating his conviction and discharging him. Appellant argues that the Superior Court's actions in that regard compounded the trial court's failure to render judgment with respect to the issue of the

Commonwealth's due diligence and its decision to, instead, rely upon its own congested schedule as justification for denying Appellant's Rule 600 motions. Indeed, Appellant emphasizes that, despite the defense's enduring position that the Commonwealth failed to exercise due diligence in prosecuting the case and in fulfilling its discovery obligations — and Appellant's attorneys' strenuous and repeated arguments in support of that stance at both Rule 600 hearings — the Commonwealth failed to offer any evidence related to its due diligence. While Appellant lauds the Superior Court's acknowledgement that the trial court misapprehended the burden of proof in reviewing the Commonwealth's due diligence, he maintains that, by predominantly focusing upon the erroneous standard employed by the trial court, the Superior Court overlooked the Commonwealth's failure to offer any evidence whatsoever in relation to the question of due diligence. Thus, in essence, Appellant suggests that the Superior Court's decision to remand provides the Commonwealth an unwarranted third chance to meet its burden of proving due diligence.

Moreover, according to Appellant, the record is not only devoid of evidence that the Commonwealth acted with due diligence, but is also brimming with proof that the Commonwealth failed to disclose discovery in a timely manner. Specifically, Appellant maintains that the available evidence, including the docket entries and the transcripts from the Rule 600 hearings, readily establishes that the Commonwealth had not yet fully disclosed discovery in September 2015; had likewise not fulfilled its discovery obligations as of December 2015 and January 2016; had not completed discovery through May 2016; and only finished providing discovery to the defense in November 2016, when, on the morning of trial, it produced 15 new documents. Appellant contends that, in addition to making no effort to prove due diligence, ADA Gehrke admitted that he was unaware of what discovery had been disclosed to the defense prior to the case being reassigned to him, revealing that he made no effort to discern as much. Appellant submits that "[t]he

Superior Court's opinion reflects the clear evidence on the record that the Commonwealth failed to turn over mandatory discovery until the eve of trial, several months past the Rule 600 deadline." Appellant's Brief at 15.

Appellant next avers that the Superior Court's reliance on *Selenski*, *supra*, in remanding this case for further consideration was misplaced because, therein, "'[n]either the parties nor the [trial] court referenced due diligence at argument on the appellant's motion to dismiss'" — circumstances which led this Court to conclude that "'the proper action would have been a remand to the trial court to determine whether the Commonwealth exercised due diligence pursuant to Rule 600.'"[8] *Id.* at 18 (quoting *Selenski*, 994 A.2d at 1089). Hence, in Appellant's view, the failure of any party in *Selenski* to raise due diligence was the determinative factor on which our Court relied in finding that remand was justified. Conversely, here, Appellant stresses that, at both Rule 600 hearings, his counsel vociferously argued that the Commonwealth failed to act with due diligence throughout the case, but the Commonwealth nevertheless neglected to address that issue. Appellant contends that the Commonwealth's failure to provide evidence of its due diligence at either hearing, coupled with "the trial court's failure to resolve an issue squarely presented to it," does not entitle the Commonwealth to a third opportunity to meet its burden of proof. *Id.* at 19.

Appellant suggests that the outcome here should, instead, be guided by our decision in *Commonwealth v. Akridge*, 422 A.2d 487 (Pa. 1980) (*per curiam*), wherein we reversed the Superior Court's order remanding for an evidentiary hearing on the question of whether, at two prior hearings, the Commonwealth had established due diligence under Pa.R.Crim.P. 1100 — the precursor to Rule 600. While acknowledging that *Akridge* is a

---

[8] As discussed in further detail *infra*, in *Selenski*, we ultimately declined to remand the case and reviewed the due diligence matter *de novo*, in the interest of judicial economy. *See Selenski*, 994 A.2d at 1089 n.7.

non-binding *per curiam* decision, Appellant nonetheless observes that, therein, we found that "a 'second bite' of the Commonwealth's evidentiary burden on the 'due diligence' requirement of Rule 1100 [was] in contradiction to the mandates we set forth in *Commonwealth v. Ehredt*, [401 A.2d 358 (Pa. 1979)]." *Akridge*, 422 A.2d at 487. Appellant proffers that *Ehredt* supports the notion that remand is inappropriate where the Commonwealth fails to offer evidence of its due diligence in the first instance, noting that we cautioned in that case that the Commonwealth may not meet its burden of proof by way of bald assertions. *See Ehredt*, 401 A.2d at 360-61.[9]

Finally, Appellant asks us to clarify the proper standard for disposing of Rule 600 motions, and the proper order in which the trial courts should consider the issues implicated in a motion to dismiss pursuant to Rule 600, by adopting the reasoning and procedure espoused by Justice Wecht in his concurring opinion in *Commonwealth v. Mills*, 162 A.3d 323 (Pa. 2017).[10] Indeed, in Appellant's view, Justice Wecht properly

---

[9] In urging us to find *Akridge* and *Ehredt* controlling and remand unnecessary, Appellant also relies upon two probation violation cases, *Commonwealth v. Mullins*, 918 A.2d 82 (Pa. 2007), and *Commonwealth v. Foster*, 214 A.3d 1240 (Pa. 2019). Specifically, Appellant highlights that, in *Mullins*, we found that a remand for a new probation violation hearing was proper, in light of a procedural anomaly whereby evidence of the defendant's probation violation was noted, but not properly entered on the record. By contrast, Appellant explains that, in *Foster*, no such procedural anomaly existed, and the Commonwealth merely failed to meet its evidentiary burden; Appellant asserts that this difference allowed our Court in *Foster* to reject the Commonwealth's request for a remand to present further evidence because it failed to do so in the first instance. Appellant maintains that, here, the circumstances comport with *Foster*, rather than *Mullins*, given the Commonwealth's blatant failure to present any evidence of its due diligence, thus rendering remand improper. In light of our disposition, however, we need not address this aspect of Appellant's argument, as we are able to reach a conclusion based solely upon Rule 600 jurisprudence.

[10] We issued our decision in *Mills* on June 20, 2017 − after the trial court's denial of Appellant's two Rule 600 motions, but nearly two years prior to the Superior Court's disposition below. Notably, this author and Justice Donohue joined Justice Wecht's concurring opinion in *Mills*.

reasoned therein that "due diligence must be proven by the Commonwealth, and assessed by the court, before 'judicial delay' becomes a consideration in the time calculation for Rule 600." Appellant's Brief at 24 (quoting *Mills*, 162 A.3d at 326 (Wecht, J., concurring)). Appellant asserts that, here, consistent with Justice Wecht's methodology, the trial court was required to assess the Commonwealth's due diligence before relying upon its own scheduling issues as a basis for denying Appellant's motions to dismiss. *Id.* at 25.[11]

Appellant maintains that the process delineated in the *Mills* concurrence comports with the language of Rule 600 and the comment thereto, as well as Rule 600 jurisprudence. Indeed, in that latter regard, Appellant contends that, "[w]hile prior cases have addressed the concept of 'judicial delay' and have held that such delay will not prompt dismissal of charges under Rule 600, all of those cases have been premised upon a finding that the Commonwealth had been diligent." *Id.* at 25-26 (citing *Commonwealth v. Maglieri*, 889 A.2d 604, 607 (Pa. Super. 2005) ("It is long-established that judicial delay may serve as a basis for extending the period of time within which the Commonwealth may commence trial where 'the Commonwealth is prepared to commence trial prior to the expiration of the mandatory period but the court[,] because of scheduling difficulties or the like[,] is unavailable.'" (quoting *Commonwealth v. Shelton*, 364 A.2d 694, 699 (Pa. 1976))); *see also Mills*, 162 A.3d at 325 ("[W]here a trial-ready prosecutor must wait several months due to a court calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable. Here, however, the Commonwealth does not argue that it was prepared for trial during the 174 days at issue.")). Moreover, Appellant argues that permitting the Commonwealth to evade its Rule 600 obligations by citing to

_____

[11] Pertinently, Appellant highlights that he advocated before the Superior Court that the *Mills* concurrence set forth the appropriate standard, although the court declined to address that contention.

the trial court's busy schedule, without proving that it was nevertheless prepared to proceed, would deprive the due diligence component of the rule of meaning. Appellant's Brief at 26 (citing *Mills*, 162 A.3d at 326-27 (Wecht, J., concurring)). As such, Appellant implores us to "promote the more efficient resolution of Rule 600 motions by explicitly adopting the paradigm outlined in Justice Wecht's concurring opinion in *Mills*," thereby providing "clear guidance" to the lower courts and ensuring that the Commonwealth "is held accountable for its obligation to diligently bring defendants to trial in a timely fashion," while continuing to protect the Commonwealth from unjustifiable discharge of a case where it has acted diligently. *Id.* at 27.

The Commonwealth counters that the Superior Court correctly remanded the case, given the trial court's failure to make the necessary due diligence determinations at the hearings on Appellant's Rule 600 motions. The Commonwealth likens the instant matter to *Selenski*, claiming that, in both cases, the trial court "'los[t] sight of the rule's overarching principles and thus fore[went] a Rule 600 due diligence analysis.'" Commonwealth's Brief at 11 (quoting *Selenski*, 994 A.2d at 1089) (alterations original). However, in the Commonwealth's view, this Court's *de novo* review in the interest of judicial economy would be improper here as compared to *Selenski*. On that point, the Commonwealth contends that the issue of due diligence cannot be evaluated based on the current record, maintaining that the indications on the docket that it had not fully disclosed discovery at various points throughout the life of the case are not a sufficient basis on which to render a due diligence determination. The Commonwealth further claims that, because a grand jury was involved in the initiation of this case, any delay related to discovery of grand jury material would not have constituted a lack of due diligence unless it was within 60 days of the start of trial, pursuant to Phila.Crim.R. *556.2 (delineating the process for cases in Philadelphia County initiated by an IGJ, including

the scheduling process whereby the trial court holds a status conference 60 days prior to trial, at which IGJ material is turned over to the defense only if both parties are prepared to proceed to trial). Thus, the Commonwealth contends that remand is necessary to clarify which items of discovery were outstanding and which, if any, were IGJ material. The Commonwealth similarly avers that the record requires clarification regarding whether the outstanding discovery was mandatory or non-mandatory in nature.

The Commonwealth next argues that, "under Rule 600, outstanding discovery only leads to includable time if the lack of discovery *caused* a delay." Commonwealth's Brief at 13 (emphasis original) (citing Pa.R.Crim.P. 600(C)(1) (mandating that "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence"); *Commonwealth v. Hill*, 736 A.2d 578, 587 (Pa. 1999) ("A delay caused by the Commonwealth's lack of due diligence will not constitute excludable time.")). Therefore, according to the Commonwealth, a remand is needed to allow the trial court to determine whether the Commonwealth's failure to produce the outstanding discovery amounted to a lack of due diligence, and, if so, whether its failure to produce discovery was the direct cause of delay. Additionally, the Commonwealth asserts that the Superior Court's remand was appropriate because the Rule 600 hearings at issue occurred prior to our decision in *Mills*. The Commonwealth claims that the trial court should be afforded the opportunity, with the benefit of this Court's guidance in *Mills*, to "'differentiate between time necessary to ordinary trial preparation and judicial delay arising out of the court's own scheduling concerns.'" *Id.* at 15 (quoting *Mills*, 162 A.3d at 325).

The Commonwealth also complains that discharge of the case would have been unfair, in light of the trial court's commentary indicating that it did not matter whether

discovery was complete and that it would not hold its own unavailability against the Commonwealth in ruling on Appellant's Rule 600 motion. *See* N.T. Hearing, 6/22/16, at 6-7. The Commonwealth maintains that,

> [a]fter the [trial] court explained that it did not need to consider any potential discovery issues (which may have implicated the Commonwealth's due diligence) with respect to periods of judicial delay, the prosecutor had no reason to delve into the specific discovery outstanding during those times and the reason it was outstanding.

Commonwealth's Brief at 16. In any event, the Commonwealth avers that it provided the trial court with written calculations of Rule 600 time at the June 2, 2016 hearing, and argued that the defense failed to tender a discovery request with respect to certain items or to alert the newly-assigned prosecutor, ADA Gehrke, that it had not been previously provided with such discovery.

Relatedly, the Commonwealth contends that the trial court sought to expedite the June 2, 2016 hearing, further undercutting its ability to provide evidence pertaining to due diligence. According to the Commonwealth, the trial court's failure to ask specific questions about discovery, and the fact that it declined an offer by the defense to make copies of discovery letters or other evidence, were products of the trial court's use of an improper standard in reviewing Appellant's motion. The Commonwealth posits that, if the trial court had been operating under the correct standard, it "would not have truncated the hearing and would have delved into when specific pieces of discovery were outstanding and why, and whether the discovery issues in fact caused the trial to be delayed." *Id.* at 17. In this regard, the Commonwealth suggests that what, in its view, amounts to an incomplete record is the result of the trial court's deficiencies, rather than its own.

Turning to Appellant's second Rule 600 motion, the Commonwealth claims that it was essentially blindsided by the defense's argument that it had not been previously provided with certain items included in the discovery packet on the morning of the

scheduled trial. The Commonwealth contends that it had no notice of the defense's intent to raise a second Rule 600 issue, and thus "had no opportunity to find out more information about the discovery," such as what items were disclosed by the prosecutor who was originally assigned to the case. *Id.* at 18. As a result, the Commonwealth asserts that it was deprived of a full and fair opportunity to prove its due diligence.

Next, the Commonwealth disputes Appellant's contention that *Akridge*, *supra*, is instructive, highlighting that *Akridge* is a *per curiam* order with no precedential value. *See Commonwealth v. Thompson*, 985 A.2d 928, 937 (Pa. 2009) ("This Court has made it clear that *per curiam* orders have no *stare decisis* effect."). The Commonwealth avers that it would have been improper for the Superior Court to rely upon *Akridge* whilst ignoring *Selenski*. In any case, the Commonwealth suggests that *Akridge* is distinguishable from the case *sub judice*, as evinced by the Superior Court's reasoning in that decision. *See Commonwealth v. Akridge*, 419 A.2d 18 (Pa. Super. 1980), *rev'd*, 422 A.2d 487 (Pa. 1980). Indeed, the Commonwealth explains that the Superior Court in *Akridge* remanded for further evidentiary proceedings "[b]ecause no evidence was presented," and the court was, therefore, "unable to assess the merits" of the Commonwealth's form petition filed under former Rule 1100; notably, rather than present evidence before the trial court, the Commonwealth had merely complained that a witness was not available and a police officer was ill. *Id.* at 21. The Commonwealth proffers that we then overturned the Superior Court's remand order, noting that it would have been tantamount to allowing the Commonwealth a second opportunity to present evidence relative to its assertions that a witness was unavailable and an officer was ill. The Commonwealth reasons that, here, to the contrary, the Superior Court ordered a remand because the trial court failed to undertake a due diligence analysis — not because the Commonwealth failed to present evidence. According to the Commonwealth, "[t]he

remand in *Akridge* solely provided the Commonwealth with a second chance to meet its obligations, whereas here the remand was to direct the trial court to apply the proper legal analysis in making its Rule 600 decision."[12]  Commonwealth's Brief at 21.

Finally, the Commonwealth contends that Appellant's request for us to adopt the view espoused by Justice Wecht in his concurring opinion in *Mills* is beyond the scope of this appeal.  In this vein, the Commonwealth claims that the question which our Court accepted for review merely required the parties to address "whether the Superior Court appropriately ordered a remand," positing that the question "does not involve review of the Superior Court's decision that the trial court misapplied Rule 600 or consideration of the way . . . the trial court evaluated due diligence."  *Id.* at 22-23.  The Commonwealth also avers that Appellant has failed to clearly explicate the actions which he desires us to undertake, as well as the extent to which adoption of the *Mills* concurrence would legitimately impact the outcome of this matter.  In the Commonwealth's view, the plain language of Rule 600, even if read in conjunction with the *Mills* concurrence, requires the trial court to consider the cause of a delay before assessing the Commonwealth's due diligence.  Essentially, the Commonwealth argues that the *Mills* concurrence is immaterial to this matter, and, therefore, urges us to reject Appellant's invitation that we formally adopt it.

As an initial matter, we reject the Commonwealth's contention that Appellant's invitation for us to adopt the *Mills* concurrence as the appropriate construction of Rule 600(C)(1) is beyond the scope of this appeal.  Although the Superior Court did not address the propriety of the standard articulated in the *Mills* concurrence — namely, that "due

---

[12] The Commonwealth likewise views *Ehredt* as distinguishable, again noting that, therein, the trial court was not deemed to have applied an incorrect standard or to have conducted an incomplete analysis in ruling on a motion for continuance under former Rule 1100.  The Commonwealth reiterates that, in its view, *Selenski* provides the appropriate framework for this case.

diligence must be proven by the Commonwealth, and assessed by the court, before 'judicial delay' becomes a consideration in the time calculation for Rule 600," *Mills*, 162 A.3d at 326 (Wecht, J., concurring) — the briefs submitted below reveal that Appellant indeed argued that the Commonwealth must prove its due diligence even if delay is attributable to the trial court's schedule, *see* Appellant's Brief in *Harth*, 683 EDA 2017, at 22-26; Appellant's Reply Brief in *Harth*, 683 EDA 2017, at 7, while the Commonwealth ardently maintained that the *Mills* concurrence was inapposite and, in any event, not binding, *see* Commonwealth's Brief in *Harth*, 683 EDA 2017, at 15 n.8. Moreover, in seeking allowance of appeal, Appellant argued that the *Mills* concurrence correctly summarized the Commonwealth's obligations with respect to proving due diligence despite periods of judicial delay, *see* Petition for Allowance of Appeal at 21, and sought for us to "clarify that the Commonwealth must, any time the deadlines under Rule 600 have been violated, prove that it has been duly diligent in attempting to meet all its obligations and bringing the defendant to trial in a timely manner," *id.* at 22.

Hence, consideration of the standard enunciated by Justice Wecht in *Mills* is not beyond the scope of our grant of allocatur, and Appellant's request for us to consider formal adoption of that standard is fairly encompassed by the question pending before us. We will address that aspect of the appeal first.[13]

As we have previously explained, this Court adopted Rule 600, and its predecessor, in response to the United States Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514, 530 (1972) (endorsing a balancing test to determine whether a defendant's constitutional right to a speedy trial under the Sixth Amendment to the United

---

[13] While, in general, we review a trial court's denial of a Rule 600 motion for an abuse of discretion, *see Commonwealth v. Burno*, 154 A.3d 764, 793 (Pa. 2017), where, as here, the dispositive question implicates legal issues, our review is plenary, *Mills*, 162 A.3d at 325.

States Constitution has been violated). *See Commonwealth v. Bradford*, 46 A.3d 693, 700 (Pa. 2012). Specifically, the high Court promulgated a four-part test to be employed by courts in determining whether a particular defendant was deprived of his right to a speedy trial, under which a court is required to consider the length of the delay involved, the reason for such delay, the defendant's assertion of his or her right, and the prejudice to the defendant. *Barker*, 407 U.S. at 530. While the high Court declined to prescribe a definitive period of time in which defendants must be brought to trial, it nonetheless explained that the States were entitled to impose "a reasonable period consistent with constitutional standards" via legislation or rulemaking. *Id.* at 523.

In light of the Supreme Court's decision in *Barker*, this Court found it prudent "to formulate a rule of criminal procedure fixing a maximum time limit in which individuals accused of a crime shall be brought to trial," reflecting the dual purposes of "more effectively protect[ing] the right of criminal defendants to a speedy trial," and the efficient administration of justice. *Commonwealth v. Hamilton*, 297 A.2d 127, 133 (Pa. 1972). Accordingly, we adopted Rule 1100, subsequently renumbered Rule 600.

As noted above, the most recent version of Rule 600, which went into effect on July 1, 2013, provides that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). Further, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence," while "[a]ny other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). A defendant who has not been brought to trial within the time specified in Rule 600(A) may, at any time prior to trial, "file a written motion requesting that the charges be dismissed with prejudice on the ground that [the] rule has

been violated." Pa.R.Crim.P. 600(D)(1). If the trial court determines that the Commonwealth violated Rule 600, it shall dismiss the charges and discharge the defendant. *See Burno*, 154 A.3d at 793.

In *Mills*, *supra*, we examined the meaning of "delay" in the computational instructions in Rule 600(C), as revised in 2013. Therein, the Commonwealth filed a criminal complaint against the appellant on June 6, 2011, charging him with multiple offenses. At a status conference held on September 27, 2011, the trial court initially slated the appellant's trial to begin on April 2, 2012, but, following a second status conference on March 20, 2012, trial was continued per the Commonwealth's request. *Mills*, 162 A.3d at 324. Notably, in seeking the continuance, a prosecutor informed the trial court "that the Commonwealth was not yet in a position to provide complete discovery, the assigned assistant district attorney had a planned vacation on the then-scheduled trial date, and DNA testing of genetic material from [the appellant] was contemplated." *Id.* Thus, the trial court rescheduled the appellant's trial for September 10, 2012. After his trial was again continued, the appellant filed a Rule 600 motion to dismiss, which the trial court ultimately granted.

The Commonwealth appealed the trial court's decision, and, before the Superior Court, the parties primarily focused upon the propriety of the trial court's inclusion of the 174-day period from September 27, 2011 to March 20, 2012 in its computation of Rule 600 time. Specifically, the Commonwealth asserted that such time was excludable and should not have been attributed to it, essentially contending that the revisions to Rule 600(C) "radically alter[ed] the primary directive that trial is to commence within 365 days," and that "the instructions afford the prosecution leeway to proceed, without any diligence, to cause up to 365 days of delay in the commencement of any trial." *Id.* For his part, the appellant claimed that the Commonwealth's construction of the rule rendered it

ineffectual, maintaining that our Court never intended, in revising the rule, "to effectively toll the 365-day period throughout all periods of ordinary trial preparation." *Id.* (citation omitted). The Superior Court accepted the Commonwealth's position, and reversed the trial court's dismissal. *See Commonwealth v. Mills*, 929 EDA 2014, 2016 WL 104533 (Pa. Super. filed Jan. 8, 2016).

On appeal, we rejected the construction of Rule 600(C) adopted by the Superior Court, instead determining that "time attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600." *Mills*, 162 A.3d at 325 (citing *Commonwealth v. Morgan*, 398 A.2d 972, 975 (Pa. 1972) ("[A]ny occurrences between the filing of the complaint and the commencement of the trial which did not affect the time in which the trial was commenced[ ] is . . . not properly considered as a 'delay in the proceedings[.]'")). In so doing, we noted that trial courts retain the discretion "to differentiate between time necessary [for] ordinary trial preparation and judicial delay arising out of the court's own scheduling concerns," such that, "where a *trial-ready* prosecutor must wait several months due to a court calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable." *Id.* (emphasis added). Accordingly, we reasoned that, because the Commonwealth had not argued that it was prepared for trial during the time period at issue, the trial court properly included that time in its Rule 600 calculation; thus, we reversed the Superior Court's order and remanded for reinstatement of the trial court's dismissal order. *Id.*

As previously noted, Justice Wecht authored a concurring opinion, in which he addressed the concept of "judicial delay," astutely observing that, in distinguishing between time which passes in the normal course of a criminal case and time which elapses due to a court's burdensome calendar, "our trial courts too often make these

judgments without first considering the Commonwealth's due diligence obligation." *Id.* at 326 (Wecht, J., concurring). Indeed, Justice Wecht reasoned:

> Characterization and delineation of the contested time periods is not always an easy task. Difficulty can arise, as it did in this case, when both "judicial delay" and the Commonwealth's due diligence obligation appear as options for the court. However, these two options are not equal, to be selected at the court's discretion. Nor can "judicial delay" be substituted for due diligence. Rather, due diligence must be proven by the Commonwealth, and assessed by the court, before "judicial delay" becomes a consideration in the time calculation for Rule 600.

*Id.* Justice Wecht further opined that, notwithstanding the inherent ambiguity of the term "delay" evidenced by the parties' competing interpretations thereof, "a linear reading of [Rule 600] requires courts first to consider the Commonwealth's role in causing the delay at issue," and only after the Commonwealth proves that it acted with due diligence throughout the case should a court consider other causes for delay in bringing a defendant to trial. *Id.* Moreover, Justice Wecht explained that his view in this regard comports with the comment to Rule 600, which states that subsection (C)(1) "makes it clear that any delay in the commencement of the trial that is not attributable to the Commonwealth *when the Commonwealth has acted with due diligence* must be excluded from the computation of time." Pa.R.Crim.P. 600, cmt. (emphasis added). Thus, Justice Wecht concluded that, in computing time pursuant to Rule 600(C)(1), "'[j]udicial delay' becomes relevant only after the Commonwealth has proven its compliance with the due diligence mandate." *Mills*, 162 A.3d at 327 (Wecht, J., concurring).

Presently, we find that the methodology enunciated by Justice Wecht in *Mills* encapsulates Rule 600's dual purpose of protecting defendants' constitutional right to a speedy trial and society's countervailing right to effective prosecution of criminal cases, *Commonwealth v. Barbour*, 189 A.3d 944, 955 (Pa. 2018), while simultaneously ensuring

that the Commonwealth is "held to the requirement that it exercise due diligence at all times during the pendency of a case," *Commonwealth v. Hawk*, 597 A.2d 1141, 1145 (Pa. 1991). Furthermore, bearing in mind that we must, to the extent possible, construe our Rules of Criminal Procedure in accordance with the rules of statutory construction, *Commonwealth v. Far*, 46 A.3d 709, 912 (Pa. 2012), we agree with Justice Wecht that requiring the Commonwealth to demonstrate that it acted with due diligence before a trial court excludes time from its Rule 600 time computation on the basis of "judicial delay" comports with the language of Rule 600(C)(1) and its commentary, the purpose behind the rule, and our prior jurisprudence interpreting Rule 600 and its predecessor.

Indeed, the text of Rule 600(C)(1) requires that "periods of delay *at any stage of the proceedings* caused by the Commonwealth *when the Commonwealth has failed to exercise due diligence* shall be included in the computation of the time within which trial must commence." Pa.R.Crim.P. 600(C)(1) (emphasis added). Although not a model of clarity, and certainly the dissent has a different view, we find this language expressly calls upon a trial court to assess the Commonwealth's due diligence throughout the life of a case, when faced with a claim that the Commonwealth violated a defendant's speedy trial rights. Notably, every iteration of our speedy trial rule has encompassed a similar requirement.

Moreover, as we have previously explained, we may consult the explanatory comment of the committee which worked on the rule in determining the proper construction and application thereof. *Commonwealth v. Lockridge*, 810 A.2d 1191, 1195 (Pa. 2002). Pertinently in this regard, the comment to Rule 600 notes that "the inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence." Pa.R.Crim.P. 600, cmt. (citations omitted). However,

the comment clarifies that, "[i]f the delay occurred as the result of circumstances beyond the Commonwealth's control *and despite its due diligence*, the time is excluded." *Id.* (emphasis added) (citing *Commonwealth v. Browne*, 584 A.2d 902 (1990); *Commonwealth v. Genovese*, 425 A.2d 367 (Pa. 1981)). Thus, the Commonwealth is required to demonstrate that it acted with due diligence during a time period *before* that period can be deemed excludable.[14] In this vein, the revised language of Rule 600(C)(1) was plainly not intended to eviscerate the Commonwealth's longstanding duty to proceed with diligence in prosecuting criminal cases. *See Mills*, 162 A.3d at 325 (declining to adopt an interpretation of the amended rule which would have afforded the Commonwealth additional leeway in prosecuting cases, as such a construction "is not borne out in any of this Court's decisions" and is "inconsistent with both the letter and spirit of Rule 600").

Relatedly, the construction of Rule 600(C)(1) espoused in the *Mills* concurrence and championed by Appellant is also harmonious with our prior jurisprudence interpreting Rule 600 and its predecessor. *See, e.g., Barbour*, 189 A.3d at 947 ("Absent a demonstration of due diligence, establishing that the Commonwealth has done everything reasonable within its power to guarantee that [the] trial begins on time, the Commonwealth's failure to bring the defendant to trial before the expiration of the Rule 600 time period constitutes grounds for dismissal of the charges with prejudice." (citation, quotation marks, and internal citation omitted; brackets original)); *Burno*, 154 A.3d at 793-

---

[14] The dissent relies upon the portion of the comment to Rule 600 which states that delay attributable to the judiciary "may be excluded from the computation of time." *See* Dissenting Opinion (Dougherty, J), at 4 (quoting Pa.R.Crim.P. 600, cmt.). However, the commentary's use of the term "may," in our view, evinces the need for a court to further assess the circumstances of that delay, including the Commonwealth's preparedness for trial, prior to deeming such time excludable. That view is harmonious with the commentary propounding that delay which occurred outside of the Commonwealth's control and "despite its due diligence" is excluded. *See* Pa.R.Crim.P. 600, cmt.

94 (noting that, generally, "delays in bringing a capital defendant to trial that result from appellate resolution of pretrial motion rulings" is considered excusable time not attributed to the Commonwealth in Rule 600 time computations, "so long as the Commonwealth acted with due diligence at all relevant times"); *Hill*, 736 A.2d at 587 ("If a delay is created, in order to establish that the delay is excludable, the Commonwealth must demonstrate, by a preponderance of the evidence, that it exercised due diligence in opposing or responding to the pretrial motion."); *Hawk*, 597 A.2d at 1145 ("[W]e find that the Commonwealth should be held to the requirement that it exercise due diligence at all times during the pendency of a case.").

Accordingly, we hold that, in ruling on a defendant's Rule 600 motion to dismiss, a trial court must first determine whether the Commonwealth has met its obligation to act with due diligence throughout the life of the case; if the Commonwealth meets its burden of proving due diligence, only then may the trial court rely upon its own congested calendar or other scheduling problems as justification for denying the defendant's motion. Otherwise, the due diligence component of Rule 600 "would have little, if any, meaningful import." *Mills*, 162 A.3d at 327 (Wecht, J., concurring).[15]

---

[15] The hypothetical scenario posited by the dissent — in which a 100-day period of delay attributable to the judiciary remains excludable if the Commonwealth was not prepared to proceed to trial on day one of the judicial delay — is misleading. *See* Dissenting Opinion (Dougherty, J.), at 10. Specifically, the dissent overlooks the fact that, under Rule 600, the Commonwealth has 365 days from the initiation of a criminal case in which to bring a defendant to trial. We do not suggest that the Commonwealth must be prepared to proceed to trial the moment that a criminal case is initiated; rather, the Commonwealth must utilize that year to prepare itself for trial, as is required under Rule 600(A). We have not altered that timeline, but, instead, seek merely to ensure that the Commonwealth does not summarily rely upon the judiciary as an excuse to forego preparation for pending criminal cases, consistent with the language and purpose of Rule 600. Indeed, under the dissent's approach, were the judiciary unable to proceed with a trial within the first year after a case was initiated, the Commonwealth could do nothing during that delay, and then take *another year* to prepare its case.

Turning to the facts presently before us, we find that, because Appellant's trial commenced on November 28, 2016, nearly two years after the Commonwealth filed the complaint against him on January 22, 2015, Rule 600's speedy trial provision is unquestionably implicated. Moreover, it is beyond dispute that the trial court failed to meaningfully address the Commonwealth's due diligence in its disposition of Appellant's Rule 600 motions. *See* Trial Court Opinion, 12/13/17, at 9; N.T. Hearing, 6/22/16, at 6-8; N.T. Trial, 11/29/16, at 21-24. Likewise, to Appellant's detriment, the trial court demonstrably erred in repeatedly transferring the burden of proving the absence of due diligence onto Appellant. *See* N.T. Hearing, 6/22/16, at 6; N.T. Trial, 11/29/16, at 23. Thus, having determined that trial courts must assess the Commonwealth's due diligence before relying upon their own scheduling difficulties and congested court calendars as justification for denying Rule 600 motions to dismiss, we must now examine whether remand is necessary here in light of the trial court's failure to address due diligence and its application of an erroneous burden of proof. For the following reasons, we find that remand is unnecessary and that, in service of judicial economy, we may review the record *de novo* and render a due diligence determination. *See Selenski*, 994 A.2d at 1089 n.7 ("This Court reviews claims *de novo* for the sake of judicial economy where the issue was raised in the Petition for Allowance of Appeal and was fully briefed before us.").

Pertinently, in *Selenski*, we granted allowance of appeal to address the propriety of the Superior Court's determination that the Commonwealth acted with due diligence in bringing a defendant to trial on escape charges while it was pursuing an interlocutory appeal in the defendant's initial case for homicide. Upon conclusion of the Commonwealth's appeal, the defendant filed a motion to dismiss the escape charges under Rule 600, which the trial court granted, concluding that the two cases against the defendant had not been properly consolidated. The Commonwealth appealed, and the

Superior Court remanded for reinstatement of the escape charges, finding that joinder of the cases should have been permitted and that there had been no Rule 600 violation.

On further review, we affirmed the Superior Court, but nonetheless explained that, while the Superior Court properly determined that the trial court misconstrued Rule 600, it compounded the trial court's error by similarly neglecting to consider due diligence and focusing its inquiry, instead, on the principles of joinder. We reasoned that the proper action once the Superior Court identified the lower court's misconstruction of the rule "would have been" for it to "remand to the trial court to determine whether the Commonwealth exercised due diligence pursuant to Rule 600." *Id.* Nevertheless, in the interest of judicial economy, we declined to remand and opted to "consider, *de novo*, whether the record support[ed] finding the Commonwealth exercised due diligence."[16] *Id.* Accordingly, *Selenski* clearly supports our decision to consider the issue of due diligence *de novo*, based on the record currently before us.

Moreover, while not binding, our disposition in *Akridge*, like our decision in *Selenski*, weighs against remand here. As the parties highlight, in *Akridge*, we concluded that the Superior Court's order of remand for the trial court to further consider the Commonwealth's due diligence was improper, given that the Commonwealth had already enjoyed the opportunity to meet its burden of proving due diligence. We found that it would have been unjust to provide the Commonwealth with another attempt to fulfill its burden. Here, we reject the Commonwealth's assertion that the record is deficient and that an additional hearing is appropriate to permit it to present evidence with respect to its due diligence. Plainly, the Commonwealth was apprised of Appellant's challenges to its due diligence at the two prior Rule 600 hearings, but declined to proffer evidence to

---

[16] Ultimately, in *Selenski*, we concluded that the Commonwealth had indeed exercised due diligence in bringing the appellant's escape case to trial.

establish that it acted with due diligence, as did the Commonwealth in *Akridge*. Indeed, we agree with Appellant that remanding to the trial court to allow the Commonwealth another opportunity to meet its burden of proof with respect to due diligence would be providing it not merely a second, but a third, bite of the proverbial apple. *See Akridge*, 422 A.2d at 487.

In any case, remand would legitimately serve only to allow the trial court to apply the correct standard – ensuring the burden of proof is on the Commonwealth – given that an additional hearing is not warranted. Indeed, in this regard, the trial court would merely be tasked with reexamining the record and rendering a due diligence determination based thereupon; we are perfectly capable of undertaking such an endeavor in the name of judicial economy and expediency. Accordingly, we find that both *Selenski* and *Akridge* amply support our decision to forego a remand and, instead, consider the inquiry of the Commonwealth's due diligence *de novo*.

The Commonwealth's further arguments in favor of remand are similarly unpersuasive. To the extent that the Commonwealth attempts to displace blame for its failure to meet its burden of proving due diligence on the trial court, we find that, despite the trial court's apparent desire to expedite the June 2, 2016 Rule 600 hearing, the Commonwealth was not precluded from providing explanation or evidence regarding due diligence — a responsibility for which it was undoubtedly aware.[17]  Similarly, the

---

[17] At the June 2, 2016 Rule 600 hearing, when asking for the prosecutor's response to Appellant's argument, the trial court stated, "Would you like to say something *very quickly*, Counsel?"  N.T. Rule 600 Hearing, 6/2/16, at 6 (emphasis added).  The trial court employed similar language in asking Appellant's counsel whether she wished to add anything, seemingly evincing that the court sought to expedite the hearing.  Nevertheless, it remained incumbent upon the Commonwealth to meet its burden of proof and to provide legitimate argument and evidence with respect to due diligence, and not try to shift that responsibility to the trial court.  *See*, *e.g.*, *Bradford*, 46 A.3d at 707 (Saylor, J., dissenting) (reasoning that "the Commonwealth should not be permitted to 'outsource' aspects of its obligation to bring cases to trial in a timely fashion, . . . free of attendant responsibility and

Commonwealth's contention that it abstained from offering evidence on the issue of due diligence *after* the trial court indicated that it would not hold its own unavailability against the Commonwealth is contradicted by the record. In its brief, the Commonwealth claims that its prosecutor was justified in refraining from addressing due diligence in light of the trial court's statements that "[i]f the [c]ourt's on trial, the [c]ourt's on trial," N.T. Hearing, 6/22/16, at 6, and that it "can't hold that [time] against the Commonwealth," *id.* at 7. Critically, as Appellant points out, the trial court made those statements at the June 22, 2016 hearing, at which the trial court issued its decision to deny Appellant's motion, rather than at the June 2, 2016 hearing, at which the court accepted arguments on that motion.

Likewise, contrary to the Commonwealth's assertion, remand is not necessary to clarify the record with respect to if and when discovery was outstanding in the case. While the Commonwealth asserts that it should be afforded the opportunity to establish that outstanding discovery was either non-mandatory, not requested by the defense, or IGJ material which was not required to be disclosed pursuant to Phila.R.Crim. *556.2, it overlooks that it had the chance at two prior hearings to establish such factors but neglected to offer any due diligence evidence, such as by demonstrating that it was not required to disclose certain items of discovery. To paraphrase Appellant: we are not presented with a defective record in need of clarification; rather, we have a record which documents the Commonwealth's failure to meet its burden of proving due diligence. *See* Appellant's Reply Brief at 2. Accordingly, we proceed to address the merits of Appellant's Rule 600 motions — specifically, the question of the Commonwealth's due diligence.

---

consequences" (internal citation omitted)). Moreover, our review of the record reveals that the trial court's apparent desire for a speedy hearing did not deter or intimidate the prosecutor as alleged by the Commonwealth; notably, the prosecutor was comfortable enough to raise a final argument, unprompted by the court, regarding the defense's motion. *See* N.T. Rule 600 Hearing, 6/2/16, at 9 ("And, Your Honor, one last thing . . . ."). We, thus, deem the Commonwealth's argument on this point to be meritless.

Our review of the record reflects that: the Commonwealth filed a complaint against Appellant on January 22, 2015; the trial court initially directed the Commonwealth to complete its disclosure of discovery by June 22, 2015, Criminal Docket at 7; on June 22, 2015, the Commonwealth was not prepared to fulfill its discovery obligations, *id.*; the Commonwealth requested a continuance on July 28, 2015 related to its discovery obligations, and the trial court granted a continuance until July 30, 2015, *id.*; and the trial court granted the Commonwealth an additional continuance on August 21, 2015, noting that "IGJ discovery [needed] to be passed," *id.* at 9. Further, the record demonstrates that on May 23 and 24, 2016, "[a]dditional [d]iscovery [was] outstanding," *id.* at 12, while the Commonwealth disclosed "[a]udio discovery . . . at the bar of the [c]ourt" on May 25, 2016, *id.* at 13. Finally, the record establishes that on November 28, 2016, the morning on which Appellant's trial was to begin, the Commonwealth presented a discovery packet, which included 15 previously undisclosed exhibits, to the defense, prompting Appellant to lodge a second Rule 600 motion to dismiss.[18]

Thus, in our view, the record thoroughly establishes that the Commonwealth neglected to fulfill its discovery obligations, a failure which we have previously held constitutes a lack of due diligence. *Commonwealth v. Edwards*, 595 A.2d 52 (Pa. 1991) (finding that the Commonwealth's intentional or negligent failure to provide discovery amounted to a lack of due diligence which justified dismissal of the defendant's case). As the record here amply demonstrates that the Commonwealth failed to complete its

---

[18] Additionally, as discussed above, the transcriptions of the parties' arguments with respect to Appellant's Rule 600 motions demonstrate that, rather than provide evidence related to its failure to disclose pertinent discovery, the Commonwealth merely offered bald assertions, the likes of which we have previously heralded as deficient for purposes of proving due diligence. *See, e.g.*, *Ehredt*, 401 A.2d at 360-61 ("Although the preponderance standard is the least burdensome standard of proof known to the law, . . . a bare statement by the Commonwealth's attorney that several witnesses are 'unavailable,' without more, does not establish 'due diligence' within that standard." (internal citation omitted)).

discovery obligations through the date of trial in November 2016 — more than 365 days after the Commonwealth filed the complaint in January 2015 — it is evident that the Commonwealth was not prepared to proceed to trial prior to that time, and that it failed to prosecute Appellant's case with due diligence. Accordingly, given that the Commonwealth thus violated Rule 600, we reverse the Superior Court's order, reverse Appellant's judgment of sentence, and order him discharged.

Order and judgment of sentence reversed. Appellant is discharged.

Justices Saylor, Donohue and Wecht join the opinion.

Justice Dougherty files a dissenting opinion in which Chief Justice Baer and Justice Mundy join.